Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000459
19-DEC-2019
08:15 AM

NO. CAAP-16-0000459

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


WILLIAM TORRES, Plaintiff-Appellant, v.
THOMAS READ, Defendant-Appellee, and DOES 1-10, Defendant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 11-1-1161)


SUMMARY DISPOSITION ORDER
(By:  Ginoza, Chief Judge, Fujise and Leonard, JJ.)

Plaintiff-Appellant William Torres (Torres), appeals from the Circuit Court of the First Circuit's (Circuit Court)[1] "Order Granting Defendant Thomas Read's [(Read)] Motion for Summary Judgment" and "Final Judgment in Favor of [Read] and Against [Torres][,]" both filed on May 13, 2016.

On appeal, Torres contends (1) the Circuit Court erred when it limited its ruling to the Tapaoan[2] class action settlement agreement (Tapaoan Agreement) and (2) that justice demands that his case be allowed to go to trial.

After careful review of the points raised and the arguments made by the parties, the record on appeal, and relevant legal authorities, we resolve Torres's points on appeal as follows and we vacate and remand.

1.    In his first point, Torres argues that the Circuit Court erred in confining its consideration of Torres's negligence claim to the Tapaoan Agreement despite his presentation of "more

---

[1]    The Honorable Karl K. Sakamoto presided.

[2]    Tapaoan v. Cayetano, Civ. No. 01-815 DAE/LEK (U.S.D.C. Hawai'i).

precise arguments presented at oral argument and in writing, as well as the Complaint." Torres fails to identify these "more precise arguments" or to provide record citations for where they were preserved before the Circuit Court, which hampers our meaningful review. See Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4) ("Each point shall state: . . . (iii) where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency.") and HRAP Rule 28(b)(7) ("The argument, containing the contentions of the appellant on the points presented and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on. . . . Points not argued may be deemed waived."). As the only identified source for his precise arguments is the Complaint, we proceed to analyzing the claims contained therein.

　　　　a.　　Torres waived all but his negligence claim.

　　　　In his Complaint, Torres asserted a number of claims.[3] Excluding those dismissed by the United States District Court, they are:

1.　　Count 4, alleging State Constitutional violations under "Art. I § 5 Hawai'i Constitution (due process), Art. I § 6 (privacy), Art. 1 § 7 (searches, seizures and invasions of privacy), and Art. I § 12 (excessive punishment)," due to "the recalculation of [Torres's] sentence giving him 53 days extra days [sic] of incarceration without accurate and complete records, due process relevant to [Torres's] case, or investigation of [Torres's] claim of overdetention[.]"

2.　　Count 5, alleging negligence when Defendants breached the agreement in Tapaoan[4] to "implement new procedural safeguards that would ensure the

---

　　　　[3]　　On September 9, 2011, Torres filed an amended Complaint (Complaint) with six causes of action, naming Read individually and in his official capacity as the Administrator for the Hawai'i State Department of Public Safety's (DPS) Offender Management Office (OMO) as defendants. Read removed the case to federal court for the claims arising under the U.S. Constitution, the federal court granted Read's motion for summary judgment, and the state claims were remanded to the Circuit Court. Upon remand, Read filed a Motion for Summary Judgment as to all claims on December 28, 2012.

　　　　[4]　　The OMO was created in 2004 as a result of the Tapaoan Agreement "to assure the timely and accurate release of prisoners" and "to ensure that all appropriate documentation is obtained to compute all inmate sentences accurately and in a timely manner." It is unclear if the OMO still exists.

timely release of Hawaii's prisoners," and when Defendants did not meet their duty under HRS § 353-12 to "'establish a record for each inmate of **all** facts relating to their admission, sentence, discharge . . . and all other occurrences of note concerning the committed person[.]'" (Emphasis in original).

3.    Count 6, labeled "[p]unitive damages" because "Defendants' manner of 'recalculating' [Torres's Maximum Term Release Date (MTRD)] was wanton, oppressive and/or done in reckless disregard of constitutional and statutory rights so as to justify an award of punitive damages in an amount to be shown at trial."

With regard to the purported constitutional violations in Count 4, on appeal, Torres only discusses due process violations, and only discusses these violations in terms of Read's alleged negligent failure to implement procedural safeguards in his enforcement of DPS's January 1, 2005 policy and procedure (2005 P&P). Moreover, on appeal, he does not discuss his claim for punitive damages from Count 6. Thus, challenge to the rejection of his claims in Count 4 and Count 6 are waived. As a result, the only part of the Complaint that remains for review on appeal is the negligence claim based on: Torres's allegation that Read breached a duty under the Tapaoan Agreement to "implement new procedural safeguards that would ensure the timely release of Hawaii's prisoners"; the alleged violation of Torres's due process rights; and the purported violation of HRS § 353-12 included in Count 5 insofar as Torres argues on appeal that the Circuit Court erred in limiting its grant of summary judgment to consideration of his Tapaoan Agreement ground.

b.    Read did not carry his initial burden for summary judgment on the Tapaoan Agreement.

Torres argues that Read was negligent. Torres was convicted and sentenced to incarceration in three separate criminal actions, with judgments entered on March 11, 1991, May 17, 1991, and November 27, 2002, respectively. He claims Read was negligent in calculating his MTRD.

There are four primary elements to a negligence claim, including that there was a duty of care owed by the defendant to

the plaintiff. <u>Doe Parents No. 1 v. State, Dep't of Educ.</u>, 100 Hawai'i 34, 68, 58 P.3d 545, 579 (2002). Torres was required to show that "[a] duty or obligation, <u>recognized by the law</u>, requir[ed] the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks[.]" <u>Id.</u> (emphasis added).

> In considering whether to impose a duty of reasonable care on a defendant, we recognize that duty is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection. <u>Waugh v. University of Hawaii</u>, 63 Haw. 117, 135, 621 P.2d 957, 970 (1980); <u>Kelley v. Kokua Sales & Supply, Ltd.</u>, 56 Haw. 204, 207, 532 P.2d 673, 675 (1975). Legal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done. *Id.* (quoting <u>Tarasoff</u>, 131 Cal. Rptr. 14, 551 P.2d at 342). In determining whether or not a duty is owed, we must weigh the considerations of policy which favor the appellants' recovery against those which favor limiting the appellees' liability. <u>Waugh</u>, 63 Haw. at 135, 621 P.2d at 970; <u>Kelley</u>, 56 Haw. at 207, 532 P.2d at 675. The question of whether one owes a duty to another must be decided on a case-by-case basis. <u>Waugh</u>, 63 Haw. at 135, 621 P.2d at 970. However, we are reluctant to impose a new duty upon members of our society without any logical, sound, and compelling reasons taking into consideration the social and human relationships of our society. <u>Birmingham v. Fodor's Travel Publications, Inc.</u>, 73 Haw. 359, 370-71, 833 P.2d 70, 76 (1992) ("hold[ing] that a publisher of a work of general circulation, that neither authors nor expressly guarantees the contents of its publication, has no duty to warn the reading public of the accuracy of the contents of its publication"); <u>Johnston v. KFC Nat'l Management Co.</u>, 71 Haw. 229, 232-33, 788 P.2d 159, 161 (1990) (declining to impose a duty upon non-commercial suppliers of alcohol, i.e., social hosts, to protect third parties from risk of injuries that might be caused by adults who consume the social hosts' alcohol).

<u>Lee v. Corregedore</u>, 83 Hawai'i 154, 166, 925 P.2d 324, 336 (1996).

The Circuit Court granted summary judgment in Read's favor because Torres failed to show Read owed him a legal duty under the <u>Tapaoan</u> Agreement. Count 5 of his Complaint alleged that Read breached his duty under the <u>Tapaoan</u> Agreement "to implement new procedural safeguards that would ensure the timely release of Hawaii's prisoners." However, the <u>Tapaoan</u> Agreement is not in the record. Appellate review "must be based 'upon the evidence contained in the record, not upon matters outside of the record[.]'" <u>State v. Lewis</u>, 6 Haw. App. 624, 626, 736 P.2d 70,

4

72 (1987) (citation omitted); see also City & Cty. v. Toyama, 61 Haw. 156, 158 n.1, 598 P.2d 168, 170 n.1 (1979).

"[A] summary judgment movant may satisfy his or her initial burden of production by either (1) producing admissible evidence to show there was no genuine issue of material fact, or (2) showing that the non-moving party cannot carry his or her burden of proof at trial." Ralston v. Yim, 129 Hawai'i 46, 48, 292 P.3d 1276, 1278 (2013). Read--as movant--had the burden to present evidence showing that the Tapaoan Agreement did not impose a duty upon him to "implement new procedural safeguards that would ensure the timely release of Hawai'i prisoners," as alleged by Torres in his Complaint.[5] Read failed to carry this initial burden.

Furthermore, Torres also claimed that Read breached a number of other alleged duties. For example, Torres contended that the DPS's 2005 P&P imposed upon Read a duty to "establish an accurate and **TIMELY** release date for Torres and avoid any unreasonable risk of overdetention in adherence to approving a recalculation triggered by his [2005] P&P." (Emphasis and capitalization in original). In Count 5, Torres alleged negligence based on HRS § 353-12.

The Circuit Court did not rule on these alternative grounds. Consequently, we are without the benefit of its analysis and consideration "of policy which favor the appellants' recovery against those which favor limiting the appellee's liability." Lee, at 166, 925 P.2d at 336. Moreover, case by case consideration counseled by the Lee court is hampered by the lack of clarity in the facts of this case. For example, it is unclear why the recalculation of Torres's MTRD in Cr. No. 01-1-0548 was conducted in 2009, more than four years after the 2005 P&P took effect. Thus, this case must be remanded for further development of the factual circumstances and for the Circuit Court to consider whether the remaining grounds argued by Torres impose a duty after it "weigh[s] the considerations of policy

---

[5] Although the Circuit Court did not decide whether Torres could carry his burden at trial, we note that, at the time summary judgment was granted, the discovery deadline had not yet passed.

5

which favor the appellant['s] recovery against those which favor limiting the appellee['s] liability" in light of the circumstances that existed in this case. Id.

2. Torres's contention that justice demands that his case be allowed to go to trial "over whether Read's forcing Torres to do an extra 54 days in prison was an unreasonable act" has no merit because he was not overdetained. The miscalculated MTRD of March 5, 2011, was unauthorized by statute and unenforceable.[6] Pursuant to HRS § 706-670(5), DPS was not required to release Torres until January 22, 2018.

Although Torres's judgment was subsequently amended on April 27, 2011, he had no preexisting liberty interest or right to a release prior to his January 22, 2018 MTRD until the amended judgment was entered by the court. Torres appears to argue that, because other inmates in Torres's situation received amended sentences, he had a right to a similar amended sentence, and any time lapsing between the miscalculated MTRD and the release pursuant to the amended sentence was overdetainment.

That other inmates had their sentences amended did not create in Torres a right to have his sentence likewise amended. In a case involving five of the individuals Torres contends were overdetained, the Ninth Circuit held that prison officials' duty involved review of each inmate's institutional file and calculation of the sentence based on relevant state statutes; they had no duty "to go in search of additional courthouse

---

[6]     Prior to 2008, HRS § 706-668.5(1) (1993) provided:

**Multiple sentence of imprisonment.** (1) If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an unexpired term of imprisonment, the terms may run concurrently or consecutively. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms run concurrently.

In 2008, HRS § 706-668.5(1) was amended to provide that "[m]ultiple terms of imprisonment run concurrently unless the court orders or the statute mandates that the terms run consecutively." 2008 Haw. Sess. Laws Act 193, § 1 at 714. The amendment was explicitly made applicable only to terms of imprisonment imposed on or after June 18, 2008. Id. at §§ 3-4, at 714. Torres's last sentence, upon which this miscalculation was based, was imposed on November 27, 2002.

records that might affect [the inmate's] sentence beyond what was initially received from the court for inclusion in DPS's institutional file." <u>Alston v. Read</u>, 663 F.3d 1094, 1099-1100 (9th Cir. 2011). Because Torres was released on April 28, 2011--the very next day after the amended judgment was entered--he was not overdetained.

      For the foregoing reasons, the May 13, 2016 Final Judgment in Favor of Defendant Thomas Read and Against Plaintiff William Torres entered by the Circuit Court of the First Circuit is vacated and this case is remanded for further proceedings consistent with this summary disposition order.

      DATED: Honolulu, Hawai'i, December 19, 2019.

On the briefs:

Jack Schweigert
Rory Soares Toomey,
for Plaintiff-Appellant.

Chief Judge

Caron M. Inagaki
John F. Molay,
Deputy Attorneys General,
for Defendant-Appellee.

Associate Judge

Associate Judge